May it please the Court, I'm Gilbert Levy representing the Appellant Petitioner Mr. Rasmussen. I'd like to start out by briefly giving the Court a little bit of context for this appeal. Mr. Rasmussen, who is doing life without parole on his state murder conviction, did not have the benefit of counsel during his state post-conviction proceedings, did not have the benefit of any resources, and similarly when this case was in the district court on his habeas corpus petition, he did not have the benefit of counsel. It's only now when this matter is pending on appeal that he does have appointed counsel. I'd like to, first of all, talk about Claim 8, which I incorrectly titled in my brief Claim 11. This is the claim having to do with the new evidence that was brought forward during Mr. Rasmussen's death penalty hearing. This claim was clearly exhausted under this Court's decision in Section May, and I don't know if I'm pronouncing the name of that case correctly. In state post-conviction, he styled this claim as a due process violation. In the state petition for review, he cited Federal constitutional precedent, Grisby v. Blodgett, and under this Court's decision in Section May, that constitutes sufficient exhaustion of a Federal claim. The problem, and I would point out simply that the State made no effort in its response to distinguish the in Section May case, even though that case was specifically cited by this Court in the Certificate of Appealability. It's true that when he pled this case in state court, and I concede that, that he pled an incorrect theory. His theory was that during the penalty phase, the state court committed a due process violation in not granting a continuance, and that was a point in time in the case where he was already in the penalty phase, when a continuance on this issue wouldn't have done him any good. However, what it was, I think, was newly discovered evidence and a Brady violation. The case that he cited in support of his claim in state court was Grisby v. Blodgett, which is a Brady case. This is the issue where the boyfriend of the mother of the victim claimed to have overheard statements by the mother, stating that she was the one who had assaulted her daughter. And I think under the circumstances in that Mr. Rasmussen did cite a Brady case in his state petition, given the seriousness of the charge and the seriousness of the penalty, there was enough there for the state court to have been required to take a look at the matter and have granted him an evidentiary hearing. Counsel, this came up in the penalty phase, and yet it would supposedly go to the guilt phase. That's correct. That's correct. And clearly what he should have done or what he did do is he attempted to bring the claim up again in his state post conviction. He simply pled an incorrect theory. He pled denial of state court, trial court error in denying him a continuance. What he should have said, and we can attribute this to the fact that he had no legal training, what he should have said is that this was a Brady violation, newly discovered evidence. He did not plead the correct legal theory. I concede that, but I think there was enough there, given the seriousness of the situation. We're dealing with an actual innocence claim here for the state court to have looked into it further and have granted him an evidentiary hearing. I'd like to briefly talk about the uncertified claim, the shackling claim, and I'd like to compare this situation to the Washington Supreme Court's decision in the Davis case, which involved almost identical facts. In the Davis case, as in this case, both were Pierce County cases. In both cases, there was no apparent reason for the shackling. In both cases, what the trial court did in order to deal with shackling and to prevent jurors from seeing the shackles, it erected temporary barriers in front of counsel table, placing boxes in front of counsel table so that jurors or prospective jurors wouldn't see the defendant's fees. I don't see, you know, with respect to that claim, I don't see anywhere in the record or in the briefs any allegation by the petitioner that the jurors could see the restraints. Can you point me to someone in the record where he, you know, alleges that he can make that showing if he were granted an evidentiary hearing? I concede that there is nothing in the record where the defendant had shown the jurors could have seen his fee, but I would simply point out to the court. Well, isn't he required, isn't that a required predicate, you know, for an evidentiary hearing? No, it's an assertion that if you give me the hearing, I can show a violation. He said that in his state court proceedings. He said, if you give me, he didn't have the means. Well, he made the conclusory remark, but he never said that he could show or that he has any evidence that anybody saw the restraint, I mean, any juror, right? He had no evidence that any juror had seen the restraint, but he didn't have the means. Well, what is he going to do with the evidentiary hearing? Well, he could have, if he had an evidentiary hearing. Well, if he gets one, if he gets one, what is he going to do? He's going to call the jurors without knowing what they're going to say? He didn't have any way to develop that claim because he was in prison, he didn't have a lawyer. I understand that. So you're saying he didn't develop it. He asked for the means to develop that claim and was not given that by the state court. This is not a situation where he failed to exhaust the claim. No, but I think the problem is, though, is if we were to grant an evidentiary hearing, which is what you request, we generally have to base it on more than just speculation. Now, if he said, I was shackled and the jurors could see because it wasn't obstructed, that's one thing. Here we have boxes, and I think the best we have is they might have seen, but there's nothing else for us to base it on. So what we could be engaging in is a fruitless exercise where you call the jurors and say, no, we didn't see anything. It could be a fruitless exercise, but there's no way of knowing that without giving the petitioner the means to develop the claim. I'd like to just point out. I realize the impediments, but there's not much showing on this record that, A, you're going to be able to show that any juror saw it and, B, that you can survive a prejudice analysis, even if there's constitutional error. Well, if a significant number of jurors had seen the shackles, given that this was not a slam-dunk case for the state, I think it could have survived a prejudice analysis. We know that the trial court took measures to block the view of the shackles. But the measures that the trial court took to block the shackles are identical to the measures that the trial court took to block the shackles in the Davis case. The only difference between this case and the Davis case is that because Davis' case was a capital case, Davis had counsel and the means to develop the factual basis of the claim. Here, Mr. Rasmussen wasn't even given that opportunity. I'd like to reserve the rest of my time. Thank you, Your Honor. May it please the Court, Wanda Larson, Assistant Attorney General for the Respondent. The district court correctly denied the habeas petition because Mr. Rasmussen failed to raise his claims in state court regarding the stay and the photos, and he is now procedurally barred from doing so. As to the claim regarding the stay, this case falls squarely within the rule of this court's decision in Casey v. Moore. As to the claim regarding the photos, this case falls squarely within the rule of this court's decision in Castillo v. McFadden. The claim regarding the stay is procedurally barred because Mr. Rasmussen raised his federal constitutional claim only in his state Supreme Court briefing and not in his state appellate court briefing. Hence, he raises it in a context in which the merits were unlikely to be considered. This is precisely what happened in Casey v. Moore, and this court held it was insufficient to properly exhaust a claim. The issue in Sing Sing May did not involve this issue. It involved merely the question of whether a citation to a case that in turn raises a federal constitutional issue is sufficient for exhaustion. That's not this case. The issue here is that Mr. Rasmussen didn't raise his claim at both levels. The claim regarding the photos is procedurally barred because Mr. Rasmussen cited federal law involving solely the rules of evidence. This court held in Castillo v. McFadden that this is insufficient to properly exhaust a claim. Counsel, when we have a pro se representing himself, how liberally do we interpret what he did in state court? Your Honor, there is no basis for cause based on lack of training or poverty, and it has already been held in Coleman v. Thompson that that does not establish the cause and prejudice required to excuse exhaustion, failure to exhaust. Additionally, the Ninth Circuit has held in Hughes v. Idaho State Board of Corrections in 1986 that a petitioner's inadequacies and lack of expertise in the legal system do not excuse a procedural default. If there are no further questions, respondent requests that the court affirm the district court's denial of Mr. Rasmussen's habeas petition. I think we'd like to ask you about the shackling issue. You did brief that issue, right? Although it was not certified. That is correct, Your Honor. Go ahead. Regarding the shackling, as this court pointed out, there really are just bare assertions, and these are insufficient to show a violation of this right, and this court has made that decision in McKenzie v. McCormick. So you agree there's nothing on the record that would justify the shackling, right? That is right, Your Honor. So we start with that prong. So if the jury saw the shackling, that's a constitutional error, right? It's not necessarily a constitutional error. Not necessarily, but you have to show justification. There's no justification on the record. So if the jury saw it, I think we have a constitutional error, don't we? He would have a much better claim if he had that in the record as evidence. Well, the district court made no ruling on the record as to why shackling was necessary in this case, right? There's nothing in the record to show, you know, what the district court considered. I don't believe. It just did it. So unless you have something else to offer on the record, I agree with Justice Shuman. I don't see anything in the trial record. I don't see anything in the record of the appellate courts in Washington. I don't see anything in the record of the district court here that even purports to justify the shackling. Do you agree with that? No, Your Honor. We would not agree with that. So what was the reason given by the trial court? Your Honor, I don't have that before me at this time. I can submit that later. Well, you know, we haven't.  We just haven't seen it in the record, and you can't find it today. We don't have any justification in your briefing, in any of the decisions of the courts. So I think we have to presume, and I grant maybe you'll find it somewhere, that we don't have a justification in the record. So then how does that affect the analysis under that hypothetical? It's not sufficient because various allegations are insufficient, regardless of an absence of. Right. So where we started was it's constitutional error for a jury to see shackling unless there's some security justification given. We don't have a security justification as yet in the record that we've seen. So if the jurors saw shackling, it's constitutional error. The question here is, with what we have on the record, which is that the court tried to block the view, and with the fact, as you've heard today, that petitioner's saying, look, I could develop the claim, that's where we are. And why isn't it enough for a pro se petitioner to say, I believe I can develop this claim, in order to obtain an evidentiary hearing or some discovery process? It's because their allegations are insufficient to show a violation of that right, and there is no allegation that is sufficiently developed. There was merely the affidavit of a counsel post-trial saying that possibly they saw the shackles. But how is a pro se prisoner who's incarcerated supposed to interview jurors? Your Honor, there is a right to counsel on a direct appeal. That is where this claim should have been fully developed. But that would necessarily, I think, have involved getting juror affidavits, which would be extrinsic to the trial, which normally would be presented on a habeas proceeding, right? I think we would ordinarily say, on the direct appeal, that this is something that ought to be brought up on habeas, because there isn't an adequate record in the trial court itself. That's right, Your Honor. This is barred by 2254E, because there was a failure to develop the claim. Well, except, you know, I mean, if we want to speculate about this, this is something that happened right inside the courtroom. You know, it's not something that happened where you couldn't make a record. So it seems to me, then, in that situation, his trial counsel would have the obligation to say to the trial judge, you know, Your Honor, for the record, we object to the shackling because there's been no showing that it's necessary, something like that. That's number one, right? Number two, if the court makes some ruling that, no, I think it's necessary for whatever reason, then I think if, as, you know, petitioner says he believes that the juror could see it, then, you know, the counsel has the obligation to say, well, then I don't believe the, you know, the efforts that the court personnel are making to prevent the juror from seeing the shackles are adequate. I mean, there is an opportunity to make a record on that, you know, because it's something that happened right in the courtroom. And so maybe what he should have done is made a claim for ineffective assistance of counsel at trial, huh? That's right, Your Honor. There was no attempt to develop it in the trial court or later on. You know, the problem, though, is this, and, you know, I'm not trying to hit you with trick questions, but we've had shackling cases before where we have somewhat similar circumstances and maybe a stronger showing on probability of side, but we have reversed and we have granted a hearing on this. What I'm struggling with here is, of course, the record doesn't show justification. The record doesn't show that the petitioner developed a claim, and the claim here today is we ought to allow the petitioner to develop the claim because the petitioner had no means of developing the claim because he was in pro se incarcerated. And, you know, so that's kind of where I want a response of why we shouldn't allow that. Because as Judge Tashima pointed out, he did have the opportunity to develop the claim, which could have happened in the trial court with his appointed counsel or post-trial with a motion with a claim of ineffective assistance of counsel. Because he didn't develop his claim, he is barred by 2254E in this court. Thank you, Your Honor. May the argument hand? Thank you. In responding to this issue very briefly, I don't believe that counsel argued in her brief that, nor did the State ever make the claim, that the shackling issue was procedurally barred because it was not brought to the trial court's attention by a trial counsel. In regard to the issue of exhaustion, I think that Mr. Rasmussen did say or did at least imply in his State court pleadings that the shackles were visible to the jury, and I would respect that. You know, that's pretty thin, really, in his affidavit. He said the jury might have been able to see it, and that's all we have. What he said was, and I would invite the Court's attention to excerpt of the record, page 68. What he said was, when all were standing, Mr. Rasmussen was in plain view of the jury and in shackles. The prejudice resulted from the trial court ordering him shackled. And it seems to me that a fair inference. What are you reading from? I'm reading from his page 45 of his State court petition for postmortem. That's just an allegation. It's not even under oath. Is it? It's just an allegation. That's an allegation. And we don't know what it's based on. Well, Mr. Rasmussen was there, Your Honor, and he would have been able to see what was going on, and he would perhaps be the person. Well, if he did, there's nothing in the record to show he said anything to his attorney at the time, during the trial. That's correct, Your Honor. And he was there, and he should have said it. He should have said, look, I think the jurors can see the change. Why don't you talk to the judge? He never claimed he said anything like that to his counsel, right? But in my response to that is, in all fairness, this is the first time that the issue of procedural bar, because he didn't raise it in the trial court, has come up. And had it been brought up earlier, I would have addressed that in my brief. I don't know if it's a procedural bar. It's not a procedural bar. I'm sorry, go ahead. No, finish. Go ahead. No, I'm sorry. I don't think it's a procedural bar. It's just a question of whether his failure to develop an excuse over his tenure or not. The only thing I see in the record, and you can correct me if I'm wrong, that's under oath, is the affidavit from Linda Sullivan that says, the court's solution to concealing the defendant's shackling was to place several boxes on the floor in front of the defense counsel's table in order to shield the defendant's shackles from view by the jury. While every attempt was made to conceal the defendant's shackles from the jury, it is unclear how successful this was. Mr. Rasmussen did not believe that this solution effectively concealed the shackling at all times and believes there were occasions on which the jury saw him shackle. That's all we have, right? That's the only thing that the court has under oath. The court has Mr. Rasmussen's statement in his own pleadings, and, again, I guess we fall back on the question of whether or not the court is going to hold Mr. Rasmussen, an untrained person to the same standard that the court would require of counsel. But the counsel, you know, we do have counsel's affidavit, and counsel is very careful not to say, it seems to me, that counsel believed that the jury saw it. It just says it's unclear how successful this was. And that's the only other percipient witness we have, right? And at this point, what we have, Your Honor, with all due respect, is an undeveloped record because Mr. Rasmussen was never given a fair opportunity to develop the record. Okay. Thank you. Grab your argument in hand. Any further questions? Okay. Thank you. The case has been submitted for decision. Let's see the next case on the oral argument calendar, which is Cryer v. King County Jail.
judges: Fletcher B. , Tashima, Thomas